# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| TAVON R. WRIGHT, | ) |
| Plaintiff, | ) |
| v. | ) CV417-195 |
| CITY OF SAVANNAH, *et al.*, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Tavon R. Wright filed this 42 U.S.C. § 1983 action seeking damages for constitutional violations arising from his arrest in 2016. *See* doc. 8 at 4 (Second Amended Complaint). The Court screened the Second Amended Complaint, pursuant to 28 U.S.C. § 1915(e)(2),[1] and determined the only viable claim was a malicious prosecution claim against Kevin Fikes. *See* doc. 10 at 8, *adopted* doc. 13. On December 18,

---

[1] The Report and Recommendation erroneously states that the screening was conducted pursuant to 28 U.S.C. § 1915A. *See* doc. 10 at 1. That section, however, only applies to complaints "in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Wright was not a prisoner when he filed his complaint. *See* doc. 1. He was, however, permitted to proceed *in forma pauperis*. *See* doc. 3. Section 1915(e)(2), therefore, required the Court to dismiss the case if it determined that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune. *See* 28 U.S.C. § 1915(e)(2)(B).

2018, Fikes waived personal service, pursuant to the provisions of Fed. R. Civ. P. 4(d). *See* doc. 11 at 2. Pursuant to Fed. R. Civ. P. 12(d)(3), Fikes' answer, or other responsive pleading, was due January 6, 2019. *See id*. On January 14, 2019, Wright filed a motion for entry of default, doc. 12, and the Clerk entered the default, doc. 14. In response to direction from the District Judge, Wright moved for a default judgment. Doc. 17.

## I. Requirements for Default Judgment

In all cases where the claim is not "for a sum certain or that can be made certain by computation," a party must seek a judgment from the court. *See* Fed. R. Civ. P. 55(b)(1)-(2). As the Court of Appeals for the Eleventh Circuit has explained, "a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (internal quotation marks and alterations omitted) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Because only well-pleaded factual allegations are deemed admitted, "before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a

substantive, sufficient basis in the pleadings for the particular relief sought." *Id.*

This Court has previously made clear that:

> Federal Rule of Civil Procedure 55(b) governs the Court's ability to grant a default judgment and vests the court with discretion to determine whether it should enter judgment. *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). "[A] Defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.' [*Nishimatsu Constr. Co.*, 515 F.2d at 1206]. . . . Three distinct matters are essential for the entry of default judgment: (1) jurisdiction; (2) liability; and (3) damages. *Pitts*, 321 F. Supp. 2d at 1356.

*Am. Contractors Indem. Co. v. Energy Smart Insulation Co., Inc.*, 2016 WL 3395546, at * 1 (S.D. Ga. June 15, 2016); *see also Laufer v. Rudra Sai, LLC*, 2021 WL 261674, at * 1 (S.D. Ga. Jan. 26, 2021) ("Under Federal Rule of Civil Procedure 55(b), a court may enter default judgment against a defendant when (1) both subject matter and personal jurisdiction exist, (2) the allegations in the complaint state a claim against the defendant, and (3) the plaintiff shows the damages to which it is entitled." (internal quotation marks and citation omitted)).

## II. Jurisdiction

The record in this case establishes that the Court has both subject matter jurisdiction over Wright's claim and personal jurisdiction over Fikes. Since Wright's claim against Fikes arises under federal law, *i.e.* 42 U.S.C. § 1983, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. As to personal jurisdiction over the absent defendant; "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). The record reflects that Fikes is subject to general jurisdiction in Georgia. *See* doc. 8 at 2, 14-15 (alleging Fikes was employed by the Savannah-Chatham Metropolitan Police Department and that the tortious conduct occurred in Savannah, Georgia); doc. 11 (Waiver of Service). Accordingly, the Court should find that it has both subject-matter and personal jurisdiction.

## III. Liability

In this case, the Court's original screening analysis determined that the factual allegations in the Second Amended Complaint, taken as true, were sufficient to state a claim for malicious prosecution against Fikes.

*See* doc. 10 at 6, *adopted* doc. 13; *see also* doc. 18 at 3. For clarity and completeness, however, the Court should here reaffirm its finding that the well-pleaded allegations in the Second Amended complaint state a claim for malicious prosecution against Fikes.

> As the Court's prior Report and Recommendation explained:
>
> Malicious prosecution is a violation of the Fourth Amendment and a cognizable § 1983 claim. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003); *Whiting v. Taylor*, 85 F.3d 581, 585 & n. 5 (11th Cir. 1996). The constitutional tort of malicious prosecution requires a plaintiff to show (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; (4) caused damage to him; and (5) violated his Fourth Amendment right to be free from unreasonable seizures. *Wood*, 323 F.3d at 881-82; see *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).

Doc. 10 at 4.

The Court found that Wright had pleaded sufficient facts to support a malicious prosecution claim against Fikes. *Id*. at 6. Specifically, (1) he alleged that by securing the warrant Fikes initiated the criminal prosecution, (2) his allegation that Fikes knowingly lied alleged malice, *see Stefani v. City of Grovetown*, 2016 WL 4611575 at * 6 (S.D. Ga. Sept. 2, 2016), (3) he alleged that the prosecution terminated in his favor when it was dismissed. *See* doc. 10 at 6. The Court did not identify specific

allegations that the prosecution damaged Wright, but the Second Amended Complaint's allegations of unlawful detention and emotional distress allege injury. *See* doc. 8 at 5. Finally, although the R&R also did not identify a specific allegation that the prosecution violated the Fourth Amendment, "it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment." *Grinder v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (citing *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010); *Wood*, 323 F.3d at 882; *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004)). Thus, the Court should find that the Second Amended Complaint's well-pleaded allegations state a substantive cause of action.

## IV. Damages

Even though the Second Amended Complaint states a cause of action, a defaulted defendant is not deemed to admit the amount of damages claimed. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). In the absence of adequate factual basis in the record, the Court must hold a hearing to determine damages. *See Adolf Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) ("Damages may be awarded [on a default judgment] only

if the record adequately reflects a basis for the award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." (internal quotation marks and citation omitted)); *see also Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 ("[A] plaintiff must . . . establish that the amount [of damages] is reasonable under the circumstances[, and] . . . the Court can take evidence when necessary, or compute them from the facts of record."). On February 19, 2021, the Court held a hearing at which Wright presented argument and evidence on his alleged damages. *See* doc. 23 (Minute Entry).

Generally, the measure of damages in a § 1983 action is determined "according to principles derived from the common law of torts." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986). The Eleventh Circuit has explained:

> Section 1983 "creates a species of torts liability," and damages are determined by compensation principles of common-law tort. *Heck v. Humphrey,* 512 U.S. 477, 483, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Memphis Community School District v. Stachura,* 477 U.S. 299, 306, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Wright v. Sheppard,* 919 F.2d 665, 669 (11th Cir.1990). While defendants in § 1983 cases "are, as in common law tort disputes, responsible for the natural and foreseeable consequences of their actions," the § 1983 plaintiff must show causation. *Jackson v. Sauls,* 206 F.3d 1156, 1168 (11th Cir. 2000). Causation has two required elements: cause-in-fact and legal or proximate cause. *Id.* at 1168 n. 16. To show that the constitutional tort was a cause-in-fact of

> the injuries and damages claimed, the plaintiff must show that "except for the constitutional tort, such injuries and damages would not have occurred." *Id.* To show that the constitutional tort was the legal or proximate cause of the injuries and damages claimed, a plaintiff must show that "the injury or damage was a reasonably foreseeable consequence of the [officer's] act or omission." *Id.*

*Smith v. City of Oak Hill, Fla.*, 587 F. App'x 524, 527 (11th Cir. 2014). In the context of a default judgment, a plaintiff "must meet not only the burden of proving the fact of damage but also the burden of proving a basis for determination of the amount of damage. Although this burden of proving the amount of damage is not an onerous one, it must still be met." *Christiansen v. McRay*, 380 F. App'x 862, 863-64 (11th Cir. 2010) (internal quotation marks and citation omitted).

"A § 1983 malicious-prosecution plaintiff's injuries 'may include those associated with the prosecution,' but regardless, they must be caused by the unlawful seizure. [Cit.] Furthermore, they must be caused by the named defendants in the case." *Eloy v. Guillot,* 289 F. App'x 339, 345-46 (11th Cir. 2008) (quoting and citing *Whiting v. Traylor*, 85 F.3d 581, 586, 586 n. 10 (11th Cir. 1996), *abrogated on other grounds as recognized by Laskar v. Hurd*, 972 F.3d 1278, 1285 (11th Cir. 2020). *Whiting* explains, albeit in *dicta*:

> Recovery of damages is limited to those injuries proved to be *caused by the defendants*. This lawsuit is against arresting officers. In many cases, arresting officers will not be responsible for the continuation of the prosecution because the prosecutor (or some other factor) will break the causal link between defendants' conduct and plaintiff's injury.

85 F.3d at 586 n. 10 (citations omitted). As discussed above, legal causation depends upon foreseeability of the injury. "[A]n officer who secures an arrest warrant without probable cause is liable for all foreseeable injuries flowing from the officer's initial act, regardless of further involvement." *Carter v. Gore*, 557 F. App'x 904, 907 (11th Cir. 2014) (citing *Whiting*, 85 F.3d at 586; *Malley v. Briggs*, 475 U.S. 335 (1986)). *Carter* specifically holds that an arresting officer could be liable for damages arising out of subsequent detention, even if the officer "played no further part" in that detention. *Id.* ("[A]n officer's liability for malicious prosecution flows from initially securing an invalid warrant, and liability extends to foreseeable injuries related to subsequent seizure, detention, and prosecution.").

Given the causation requirement, the Court should exclude several of the bases of damages Wright claims. At the February 19 hearing, Wright clarified his contention that Fikes' malicious prosecution resulted

in thirteen categories of damages, which the Court will reorganize, consolidate, and analyze as follows:

    (1) Damages arising from the conditions of Wright's confinement following his arrest, including denial of access to water, refusal of a meal, denial of medication, being kept in a "smock," denial of access to adequate bathroom facilities, and an alleged "assault" by jail staff;

    (2) Emotional distress and fear of further attack by the alleged perpetrators of the shooting that ultimately resulted in Wright's arrest;

    (3) Wright's homelessness following his release from his detention;

    (4) Damages for the violation of his Fourth Amendment right to be free from unreasonable seizure by his arrest;

    (5) Damages for the loss of his liberty for seven days when he was detained after that arrest;

    (6) Damages to compensate him for the loss of a pistol that was seized at the time he was arrested and never returned; and

    (7) Emotional distress damages.

*See* doc. 23-1. At the conclusion of the hearing, Wright expressly stated that he did not contend any other bases for damages arising out of the Fikes' malicious prosecution.

Several of Wright's claimed categories of damages relate to conditions he was subjected to at the jail. At the hearing, Wright explained

that some of those conditions were the result of his being placed on "suicide watch," which, in turn, resulted from his disclosure to jail staff that he suffered from mental illness.[2] The independent actions of jail staff, and the lack of any evidence that Fikes was aware of either Wright's mental illness or the consequences of that illness upon the conditions he would be subjected to upon detention, break any causal chain between the arrest and those conditions. Wright has, therefore, failed to establish that any harm he suffered from those conditions of confinement is recoverable from Fikes.

The Second Amended Complaint explains that Wright's arrest was related to an altercation and shooting that he was involved in with several other individuals. *See* doc. 8 at 13. Wright contends that his ongoing fear of reprisal from the individuals who allegedly shot at him provides another basis for his damages in this action. *See* doc. 23-1 (listing as a basis of damage the fact that Wright "fear[s] for [his] life because the shooters

---

[2] Specifically, he alleges that, while detained, jail staff refused to provide him water on one occasion, refused to provide him breakfast on another, and refused to provide him with medication. *See* doc. 23-1. Further, he contends that he was kept without any clothes but a "smock" for six of the seven days he was detained. *Id.* Finally, he contends that he was refused permission to use the bathroom and that jail staff assaulted him when they entered the cell to move him to another cell. *Id.*

11

come and said they shot at me, but they were not locked up and charged, so I fear and I need to move"). At the hearing, Wright conceded that his fear of the alleged shooters preceded his arrest by Fikes and that the arrest did not affect that fear. Therefore, Wright has failed to establish that the arrest was the cause in fact of any fear he continues to suffer.

Finally, Wright alleges that he became homeless as a result of his arrest and detention. *See* doc. 23-1 (listing as a basis for his damages the fact that Wright "[l]ost [his] place to stay and was homeless for 1 year"). At the hearing, Wright explained that, at the time of his arrest, he was living with a relative. In order to secure his release from detention, he used funds that he would have otherwise given to that relative as his contribution for rent. When he failed to make that contribution, the relative informed him that he could no longer live with her. He was unable to find stable alternative housing for approximately one year. Although, in a somewhat attenuated sense, Fikes' actions may have been a cause-in-fact of Wright's homelessness, there is simply no evidence that it was a foreseeable consequence of the arrest. Therefore, Wright has failed to establish that any damages related to his homelessness are recoverable in this action.

However, several of Wright's identified categories of damages do appear attributable to Fikes' malicious prosecution. First, Wright is entitled to recover for the violation of his Fourth Amendment right to be free from unreasonable seizure. *Cf. Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) ("Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy. . .); *Davenport v. Cnty. of Suffolk*, 2007 WL 608125, at * 7 (E.D.N.Y. Feb. 23, 2007) (Fourth Amendment violation alone might support, at least, award "slight or nominal damages." (citing *Townes*, 176 F.3d at 146)). Second, as the Eleventh Circuit has explained, an officer's liability for malicious prosecution "extends to foreseeable injuries related to subsequent seizure, *detention*, and prosecution." *Carter*, 557 F. App'x at 907 (emphasis added). Thus, even if Wright is not entitled to recover additional damages for the conditions in which he was detained, he is entitled to recover for the fact of his seven-day detention. Third, Wright is entitled to recover for the loss of his pistol as a result of his arrest.[3] Finally, Wright is entitled to recover

---

[3] The Second Amended Complaint alleges that the pistol was seized at the time of Wright's arrest. *See* doc. 8 at 14. It also alleges that Wright contacted Fikes after the charges were dismissed and requested the return of the pistol, but Fikes refused. *Id.* at 15.

13

for the emotional injury he suffered as a result of the malicious prosecution. *See H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1088 (11th Cir. 1986) ("Emotional injury is [also] actionable under section 1983 for humiliation, embarrassment, and mental distress resulting from the deprivation of a constitutional right."); *see also Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000) ("In addition to damages based on monetary loss or physical pain and suffering, under the law a § 1983 plaintiff also may be awarded compensatory damages based on demonstrated mental and emotional distress, impairment of reputation, and personal humiliation."). The evidence proffered in support of those bases of damages is discussed more fully below in assessing the amounts Wright should recover for each.

Wright values the damages from his "initial arrest" at $50,000. *See* doc. 23-1. At the hearing, he conceded that valuation was based purely on his "personal belief," and that he could not identify any specific basis for that figure. At the hearing, he discussed the circumstances of his arrest, but did not point to any aggravating circumstances beyond the fact that he believed he was being arrested illegitimately. Given the lack of any proof of the amount claimed, and the lack of any proof of damage from the

arrest beyond the fact of the Fourth Amendment violation, the Court should award Wright only nominal damages for the arrest itself. The amount of nominal damages is traditionally fixed at $1.00. *See, e.g. Carey v. Piphus*, 435 U.S. 247, 266-67 (1978); *see also, e.g.,* PATTERN CIV. JURY INSTRUCTIONS 11th Cir. 5.13 (2020) (referring to "nominal damages of $1.00"). The Court should, therefore, award Wright $1.00 in damages for the violation of his Fourth Amendment rights.

Wright values the damages from his detention following his arrest at "$10,000 / hour." Doc. 23-1. As alleged in the Second Amended Complaint, and as Wright testified at the hearing, he was detained for seven days, from May 26, 2016 until June 1, 2016. *See* doc. 8 at 18. That period of detention could amount to as many as 168 hours.[4] Thus, Wright contends his damages from his detention amount to as much as $1,680,000. At the hearing, Wright suggested that he had done some research on prior damage awards based on periods of illegal detention, but that he found no prior case awarding as much as $10,000 per hour for such detention. Despite the lack of proof supporting his damages calculation,

---

[4] The Court notes that no evidence has been introduced to establish the precise number of hours Wright was detained. Since the Court recommends rejection of Wright's per-hour calculation of damages, this omission is moot.

as discussed above, it is clear that Wright is entitled to *some* compensation for his detention. *Cf. Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (under common-law principles, "[a] successful malicious prosecution plaintiff may recover . . . 'compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society.'" (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 887-888 (5th ed. 1984)). Based on Wright's testimony about the circumstances of his detention and its duration, the Court should award him $15,000.00 in damages.

Wright identifies two bases to value the damages he suffered from the loss of his pistol. First, he values the pistol itself at $250. *See* doc. 23-1. Second, he values the damage from the police "holding personal property for years" at $10,000 per hour. *Id.* At the hearing he clarified that the pistol was the only item of personal property that had been held. Wright failed to establish *any* damages as a result of the police holding the pistol, much less $10,000 per hour. The Court should, therefore, award no damages for the pistol's being held. Wright did, however, testify that he paid approximately $250 to purchase the pistol and that he paid

16

approximately the same amount to purchase a replacement. The Court should, therefore, award Wright $250 in damages for the loss of the pistol.

Finally, Wright values the emotional distress that he suffered as a result of the malicious prosecution at $30,000,000. Doc. 23-1. At the hearing, he testified that his principal emotional response to the initial arrest was "anger," but after release he felt "sad." He further testified that he never sought counseling for any of the emotional effects of the arrest or detention and there was no change in the treatment he received for preexisting psychological conditions. Finally, he testified that he now feels that any emotional impact from the events has resolved. Courts have recognized, in the context of § 1983 actions, that emotional distress damages "are, by their nature, not easily translated into a dollar amount. [Cit.] Consequently, the law does not provide a precise formula by which pain and suffering and emotional distress may be properly measured and reduced to monetary value." *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 308 (S.D.N.Y. 2001). Despite that difficulty, Wright's assertion of $30,000,000 is not supported by the evidence. *Cf. id.* at 308-09 (plaintiff diagnosed with post-traumatic stress disorder, which was "severely limiting, even debilitating at times, and will be a significant factor in

plaintiff's life for the foreseeable future," was entitled to $275,000). Under the circumstances, and in light of all the facts of record, the Court should award Wright $25,000.00 in damages for the emotional distress he suffered.

## V. Conclusion

For the foregoing reasons, the Court should find defendant Kevin Fikes liable to plaintiff Tavon R. Wright for malicious prosecution. The Court should further enter judgment in favor of plaintiff Wright against defendant Fikes in the sum of $40,251.00 for compensatory damages, suffered as a result of Wright's arrest, detention, and the loss of his personal property. As discussed above, the compensatory damages award is composed of the following elements: (1) $1.00 for the arrest's violation of the Fourth Amendment, (2) $15,000 for the seven-day period of detention resulting from the arrest, (3) $250.00 for the loss of personal property, *i.e.* the pistol, and (4) $25,000 for emotional distress.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all

parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 24th day of February, 2021.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA